# EXHIBIT 1

**CT Corporation**
**Service of Process Notification**
07/08/2026
CT Log Number 552723988

## Service of Process Transmittal Summary

**TO:**  Lauren Groblewski, Investigations Analyst
Abbott Laboratories
100 ABBOTT PARK RD
NORTH CHICAGO, IL 60064-3502

**RE:**  **Process Served in Michigan**

**FOR:**  Abbott Laboratories  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: LARESA WORTHY // To: Abbott Laboratories |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | 45th Circuit Court - St. Joseph County, MI<br>Case # 26414CD |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - 03/24/2025 |
| **PROCESS SERVED ON:** | The Corporation Company, Plymouth, MI |
| **DATE/METHOD OF SERVICE:** | By Process Server on 07/08/2026 at 15:20 |
| **JURISDICTION SERVED:** | Michigan |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after receiving this summons and a copy of the complaint (Document(s) may contain additional answer dates) |
| **ATTORNEY(S)/SENDER(S):** | Carla D. Aikens<br>Carla D. Aikens P.C.<br>615 Griswold<br>Ste.709<br>Detroit, MI 48226<br>844-835-2993 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/09/2026, Expected Purge Date: 07/14/2026<br><br>Image SOP<br><br>Email Notification,  Lauren Groblewski  lauren.lucy@abbott.com<br><br>Email Notification,  Jennifer Curtis  jennifer.curtis@abbott.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Company<br>40600 Ann Arbor Road E<br>Suite 201<br>Plymouth, MI 48170<br>8775647529<br>MajorAccountTeam2@wolterskluwer.com |



**CT Corporation**
**Service of Process Notification**
07/08/2026
CT Log Number 552723988

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

## PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Wed, Jul 8, 2026
**Server Name:**                             ABC Legal

| Entity Served | Abbott Laboratories |
|---|---|
| Case Number | 26-414 CD |
| Jurisdiction | MI |

| Inserts | | |
|---|---|---|
| | | |



Approved, SCAO

Original – Court
1st copy – Defendant

2nd copy – Plaintiff
3rd copy – Return

| STATE OF MICHIGAN<br>45     JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT<br>COUNTY | SUMMONS | CASE NUMBER<br>26-414 CD |
|---|---|---|

Court telephone number
(269) 467-5542

Court address
125 W. Main St., PO Box 189, Centreville, MI 49032

| Plaintiff's name, address, and telephone number<br>LARESA WORTHY | v | Defendant's name, address, and telephone number<br>ABBOTT LABORATORIES<br>40600 ANN ARBOR RD E STE 201<br>PLYMOUTH, MI 48170 |
|---|---|---|

Plaintiff's attorney bar number, address, and telephone number
Carla D. Aikens P69530
615 Griswold St., Suite 709
Detroit, MI 48226
844-835-2993

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.

| **SUMMONS** |
|---|

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>JUNE 18,2026 | Expiration date*<br>SEPTEMBER 17,2026 | Court clerk<br>*Ruby Mohney* |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (3/23) **SUMMONS**
SRA

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

## STATE OF MICHIGAN
## IN THE CIRCUIT COURT
## FOR THE COUNTY OF ST. JOSEPH

LARESA WORTHY,                              )
                                           )
    PLAINTIFF,                           )          CIVIL ACTION NO.
                                           )
    VS.                                  )
                                           )
ABBOTT LABORATORIES,                       )
                                           )
    DEFENDANT.                           )
_____)

CARLA D. AIKENS P.C.
Carla D. Aikens (P69530)
Connor B. Gallagher (P82104)
*Attorneys for Plaintiff*
615 Griswold Ste.709
Detroit, MI 48226
Tel: (844) 835-2993
Fax: (877) 454-1680
carla@aikenslawfirm.com
connor@aikenslawfirm.com

---

*There are no other pending or prior actions between these parties.*

### COMPLAINT

PLAINTFF, LARESA WORTHY, by and through her attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against DEFENDANT, ABBOTT LABORATORIES.

### JURY DEMAND

COMES NOW PLAINTIFF, LARESA WORTHY, and hereby makes her demand for trial by jury.

1

## JURISDICTION

1.      At all times relevant to this action Laresa Worthy ("Plaintiff") is an individual domiciled in  St. Joseph County in the State of Michigan.

2.      Defendant Abbott Laboratories ("Defendant") is a foreign profit corporation with a principal place of business located in Abbott Park, Illinois, and operates a facility in Sturgis, Michigan, where Plaintiff was employed, and is an employer engaged in an industry affecting commerce.

3.      Jurisdiction is proper pursuant to the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* ("ELCRA"), because this action arises under Michigan law prohibiting discrimination in employment, and Defendant conducts business within the State of Michigan, thereby subjecting it to the jurisdiction of this Court.

4.      This Court has jurisdiction over Plaintiff's Federal law claim pursuant to concurrent jurisdiction. *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 342 (1816).

## VENUE

4.      Venue is proper in the Western District of Michigan because the unlawful employment discrimination giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

5.      Plaintiff is an African American woman and a Christian.

6.      Plaintiff began her employment with Defendant at its Sturgis, Michigan facility and, over the course of nearly six years, consistently demonstrated exceptional performance as a Quality Systems (QS) Supervisor.

7.    Plaintiff was recruited from a Front-Line Leader position in the 8oz Liquid Packaging department by then QS Manager Megan Fry, who specifically sought out Plaintiff because of her reputation as an exceptional leader.

8.    Throughout her tenure, Plaintiff received positive performance evaluations and was never subject to any disciplinary action prior to the events described herein.

9.    Plaintiff was so successful in her position, she was promoted to a Grade 16 pay level in August 2023.

10.    In October 2023, Muneera Mukadam, an Indian South African woman who is visibly Muslim, joined Defendant as Plaintiff's direct supervisor.

11.    Initially, Ms. Mukadam was collegial and supportive toward Plaintiff.

12.    On December 28, 2023, Plaintiff showed Ms. Mukadam a family photo. Upon viewing the photograph, Ms. Mukadam immediately commented on how fair-skinned Plaintiff's mother was, a remark that revealed she had not previously known Plaintiff's race.

13.    Shortly thereafter, Ms. Mukadam's treatment of Plaintiff changed dramatically and irreversibly for the worse, because of Plaintiff's race.

14.    Following Ms. Mukadam's discovery of Plaintiff's race, Ms. Mukadam began subjecting Plaintiff to a pattern of harassment, belittling conduct, and discriminatory treatment, including: regularly interrupting Plaintiff and speaking to her in a condescending and demeaning manner; yelling and raising her voice at Plaintiff on multiple occasions witnessed by Plaintiff's direct reports; questioning every decision Plaintiff made and demanding written proposals and justifications not required of white peer supervisors; micromanaging Plaintiff's team while not similarly micromanaging white peer supervisors Mandy Hurley and Livia Rowe; and stripping Plaintiff of responsibilities and goals previously assigned to her by the prior QA Director.

15.     On May 3, 2024, after having been previously informed that use of the word "fetch" as a command was demeaning, Ms. Mukadam publicly posted in a Teams group chat that Plaintiff should "come fetch" a batch record.

16.     The use of this term, after being corrected, constituted a deliberate act of dehumanization and racial condescension.

17.     On multiple occasions, Ms. Mukadam yelled at Plaintiff in her office, with her voice audible to surrounding team members.

18.     Direct reports Josie Miller, Molly Boyd, Carla Tindall, and Maria Ramirez separately confirmed they overheard Ms. Mukadam yelling at Plaintiff, one direct report, Josefina Miller, was moved to tears, stating she was humiliated on Plaintiff's behalf and had not said anything sooner to spare Plaintiff further embarrassment.

19.     Plaintiff's white peer supervisor, Mandy Hurley, was not reprimanded, micromanaged, or placed on a performance improvement plan despite her team being consistently behind on batch reviews and failing to meet the same performance standards being applied to Plaintiff.

20.     Moreover, Ms. Hurley was permitted to stop displaying metrics on shared weekly accountability spreadsheets, a concession never extended to Plaintiff.

21.     In September 2024, Plaintiff began experiencing serious physical health issues as a direct result of the workplace stress caused by Ms. Mukadam's harassment.

22.     In September 2024, Plaintiff reported Ms. Mukadam's race-based conduct to HR Manager Kelsey Sobeski.

23.     Ms. Sobeski acknowledged that Ms. Mukadam was "rather condescending" toward Plaintiff.

4

24.    Ms. Sobeski offered Plaintiff three options: apply for a different position, meet with QA Director Keenan Gale and Ms. Mukadam, or file an Employee Relations (ER) ticket.

25.    Plaintiff also reported Ms. Mukadam's conduct to former QA Director David Van Daele, who stated it was unacceptable for Ms. Mukadam to speak to Plaintiff in that manner and suggested Plaintiff contact HR.

26.    After Mr. Van Daele transitioned to a role in Columbus, Ohio, Ms. Mukadam dismantled the support structures he had put in place for Plaintiff.

27.    On October 9, 2024, despite having no legitimate performance basis, Ms. Mukadam placed Plaintiff on a 30-day performance improvement memo.

28.    The memo contained numerous false statements, which Plaintiff rebutted in writing to Employee Relations representative Evelyn Lopez, with supporting documentation attached.

29.    Moreover, Ms. Mukadam also falsely accused Plaintiff of having a "behavior issue" and of raising her voice, when in fact Ms. Mukadam was the one who repeatedly raised her voice at Plaintiff.

30.    Despite Plaintiff submitting a formal ER ticket (ticket #1638656) with rebuttal materials and a detailed timeline of harassment, Employee Relations conducted no investigation, later acknowledging they had assumed QA Director Keenan Gale would handle the matter, no follow-up was provided to Plaintiff.

31.    Ms. Mukadam extended the performance memo beyond 30 days without notifying Plaintiff.

32.    Plaintiff only discovered this when a prospective internal hiring manager informed her that Ms. Mukadam had told them Plaintiff was still on the memo, effectively blacklisting her from internal positions in retaliation for her HR complaint.

5

33.    In February 2025, Ms. Mukadam issued Plaintiff a "Not Achieved" rating on her 2024 annual performance review, the first negative rating Plaintiff had ever received in her career at Abbott, and presented her with an ultimatum: accept a demotion from Grade 16 Supervisor to Grade 14 Batch Reviewer, or be terminated, no written documentation was provided with this ultimatum.

34.    On February 24, 2025, Plaintiff elected to accept the demotion under duress.

35.    Ms. Mukadam's was visibly displeased, suggesting she had anticipated and hoped for Plaintiff's termination.

36.    On February 27, 2025, upon Plaintiff's return from two pre-approved vacation days, Ms. Mukadam summoned her to the HR conference room and informed her she was being suspended with pay and subjected to investigation for alleged "workplace communication and behavior" involving a purported text message of "retaliation."

37.    Plaintiff was not shown any evidence, was not permitted to respond, and was immediately escorted from the building after being required to surrender her work laptop, work cell phone, and Abbott-issued backpack.

38.    As Plaintiff was escorted out, HR Manager Kelsey Sobeski silently mouthed the word "sorry" to her, suggesting the HR representative herself was troubled by the proceedings.

39.    On March 24, 2025, Ms. Mukadam called Plaintiff and, with QE Manager Brian Austin on the line but with no HR representative present, informed her that the investigation was complete and that Abbott had decided to end her employment effective immediately due to alleged violations of Abbott's code of conduct.

40.     No written documentation was provided. Abbott later confirmed that ER Ticket #1780128, related to the termination investigation, was still listed as open as late as May 19, 2025, yet no meaningful investigation or action had been related to Plaintiff's report.

41.     After Plaintiff's termination, information came to light confirming that Ms. Mukadam had been systematically preparing Alexis Alwood, a white batch reviewer, to replace Plaintiff even while Plaintiff was still employed.

42.     Ms. Mukadam assigned Ms. Alwood tasks and training opportunities that had previously belonged to Plaintiff, including presenting at site-wide training sessions and New Hire Onboarding, and arranged a sham interview process in which she told a colleague she had "already interviewed" the preferred candidate and that formal interview protocols were unnecessary.

43.     Ms. Alwood was placed in Plaintiff's position on an interim basis and was subsequently hired permanently into the role.

44.     After Plaintiff's termination, all four Quality Systems Supervisors now reporting to Ms. Mukadam were white women.

45.     After Plaintiff's termination, the audit standards, overtime policies, and performance metrics that Ms. Mukadam had used to manufacture Plaintiff's alleged failures were quietly modified, auditors were permitted to work overtime freely, goals were relaxed, and practices Plaintiff had proposed and been denied were implemented without resistance, confirming that the standards applied to Plaintiff were pretextual and selectively enforced.

46.     Plaintiff also observed and reported race-based discrimination against other Black employees at Abbott's Sturgis facility.

47.     In 2024, three Black female employees in the Quality Assurance department left Abbott due to unfair or disrespectful treatment from white and Indian supervisors.

48.    In 2025, an additional Black female supervisor resigned due to lack of support from her manager.

49.    Plaintiff is further informed and believes that Ms. Mukadam's discriminatory conduct was also directed at Plaintiff's Hispanic direct report, Josie Miller, and at Plaintiff and her Christian direct reports on the basis of religion.

50.    Ms. Mukadam, a visibly Muslim woman, singled out Plaintiff and her minority and Christian direct reports, who displayed religious scripture in their workspaces, for correction, criticism, and allegations of "negative behavior" not leveled at other employees.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 *et seq.* ("ELCRA")

51.    Plaintiff incorporates by reference all preceding paragraphs.

52.    Plaintiff is a member of a protected class as an African American woman.

53.    Defendant is an employer within the meaning of ELCRA.

54.    Defendant, through its agents and supervisory employees, including Ms. Mukadam, discriminated against Plaintiff with respect to the terms, conditions, and privileges of employment because of her race.

55.    Such discrimination includes, but is not limited to: subjecting Plaintiff to heightened scrutiny, disparate discipline, false performance criticisms, removal of responsibilities, denial of opportunities, demotion, and termination, while similarly situated white employees were treated more favorably.

56.    Defendant's stated reasons for its actions were not the true reasons, but rather a pretext for unlawful discrimination.

8

57.    As a direct and proximate result, Plaintiff suffered lost wages, lost benefits, emotional distress, humiliation, and damage to her career.

58.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF ELCRA

59.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

60.    Plaintiff engaged in protected activity by reporting race discrimination and harassment to HR and Employee Relations.

61.    Defendant, through its agents, took materially adverse actions against Plaintiff, including placing her on a performance plan, extending it, interfering with internal job opportunities, demoting her, suspending her, and ultimately terminating her employment.

62.    There is a causal connection between Plaintiff's protected activity and the adverse employment actions, including close temporal proximity and escalating treatment following her complaints.

63.    Defendant's actions would dissuade a reasonable employee from engaging in protected activity.

64.    As a direct and proximate result, Plaintiff suffered damages including lost wages, benefits, and emotional distress.

65.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF ELCRA

66.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

67.    Plaintiff was subjected to unwelcome conduct based on her race.

68. The conduct included repeated yelling, public humiliation, demeaning language (including the "fetch" comment), micromanagement not imposed on white peers, and stripping of responsibilities.

69. This conduct was severe and pervasive and created an objectively hostile and abusive work environment.

70. Defendant knew or should have known of the harassment through Plaintiff's complaints to HR and management and failed to take prompt remedial action.

71. As a direct and proximate result, Plaintiff suffered damages including emotional distress, physical health issues, and economic loss.

72. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV
## RELIGIOUS DISCRIMINATION IN VIOLATION OF ELCRA

73. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

74. Plaintiff incorporates all preceding paragraphs.

75. Plaintiff is a practicing Christian and openly expressed her religious beliefs in the workplace.

76. Defendant, through Ms. Mukadam, treated Plaintiff and her Christian direct reports less favorably than other employees by subjecting them to disproportionate criticism and scrutiny.

77. This conduct constituted discrimination with respect to the terms and conditions of employment based on religion.

78. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of compensation, emotional distress, humiliation, and mental anguish.

79. Plaintiff requests relief as described in the Prayer for Relief below.

10

## COUNT V
## DISCRIMINATION AND RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

80.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

81.    42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts, regardless of race, and prohibits retaliation against persons who engage in protected activity opposing race discrimination.

82.    Defendant intentionally discriminated against Plaintiff on the basis of her race, African American, by: (a) subjecting her to a racially hostile work environment; (b) imposing false and pretextual performance standards; (c) demoting and terminating her employment under false pretenses; (d) refusing to protect her from documented harassment; and (e) replacing her with a less-qualified white employee.

83.    Defendant's actions were willful, intentional, and made with reckless disregard for Plaintiff's federally protected rights.

84.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained damages, including but not limited to loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, anxiety, emotional distress, and loss of professional reputation.

85.    Plaintiff requests relief as described in the Prayer for Relief below.

### RELIEF REQUESTED

PLAINTIFF, Laresa Worthy, RESPECTFULLY REQUESTS that this Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Non-Economic damages to the amount to which Plaintiff is entitled;

3. Punitive damages in whatever amount to which Plaintiff is entitled;

11

4.  An award of lost wages and the value of fringe benefits, past and future; and

5.  An award of interest, costs, and reasonable attorney fees;

6.  Such other and further equitable relief as the Court deems just and proper.


Dated: June 12, 2026                                        Respectfully Submitted,

                                                            /s/ Carla D. Aikens
                                                            Carla D. Aikens, (P69530)
                                                            Carla D. Aikens, P.L.C.
                                                            *Attorneys for Plaintiff*
                                                            615 Griswold Ste. 709
                                                            Detroit, MI 48226
                                                            carla@aikenslawfirm.com

# Case Details

Additional Resources ▾

| | |
|---|---|
| **Case ID** | **Court Location** |
| 2026-0000000414-CD | 45th Circuit Court - Centreville |
| **Case Entitlement** | **Judge of Record** |
| WORTHY V ABBOTT LABORATORIES | MARIETTI,WILLIAM,C |

| | |
|---|---|
| **Date Filed** | **Case Status** |
| 06/18/2026 | OPEN |
| **Closed Date** | **Balance** |

## Parties (2)

| **Party Name** | **Party Type/Number** |
|---|---|
| WORTHY,LARESA, | PLAINTIFF - 1 |

| | |
|---|---|
| **Attorney Name** | **Alternate Name(s)** |
| CARLA DORSEY AIKENS | |
| **Answer Date** | **Service Date** |
| **Disposition** | **Disposition Date** |

| **Party Name** | **Party Type/Number** |
|---|---|
| ABBOTT LABORATORIES | DEFENDANT - 1 |

| | |
|---|---|
| **Attorney Name** | **Alternate Name(s)** |
| **Answer Date** | **Service Date** |

| Disposition | Disposition Date |
|---|---|
| | |

## Bonds (0)

## Hearings (0)

## Financial Orders (0)

## Events (2)



| Date | Description | Comment | Party/Count | Amount | Receipt No./Date/Judge | Clerk |
|---|---|---|---|---|---|---|
| 06/18/2026 | COMPLAINT | COMPLAINT WITH JURY DEMAND FILED | | | | MP |
| | | Hearing Officer - MARIETTI,WILLIAM,C | | | | |
| | SUMMONS | | | | | MP |
| | | Hearing Officer - MARIETTI,WILLIAM,C | | | | |